UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

– against –

ISAAK ALMALEH, a/k/a "ISAAK IZRAEL,"
and ANTOANETA IOTOVA,

                         Defendants.

**ORDER**

17-cr-25 (ER)

---

RAMOS, D.J.

On January 11, 2017, Isaak Almaleh and his wife, Antoaneta Iotova, were indicted for their involvement in a scheme to obtain real property though fraud. Doc. 2. They were arrested by law enforcement on January 25, 2017, and their trial began on March 2, 2022. On March 17, 2022, the jury returned a guilty verdict against the defendants on all counts: conspiracy to commit mail fraud and wire fraud (Count One), mail fraud (Count Two), wire fraud (Count Three), and making false statements to the Federal Deposit Insurance Corporation (Count Four).

On January 20, 2023, the defendants appeared for sentencing, and the Court determined that the total offense level pursuant to the U.S. Sentencing Guidelines was 31. Sentencing Transcript, Doc. 557 at 14. The total offense level was based on, among other things: (1) an 18-level enhancement because the loss was more than $5.7 million, (2) a 4-level enhancement because five or more victims suffered substantial financial hardship, and (3) a 2-level enhancement for obstruction of justice. *Id.* Thus, the applicable guidelines sentencing range was 108 to 135 months. After hearing from the parties, the Court imposed a sentence of time served (which amounted to approximately 30 months' imprisonment for each defendant), to be followed by

three years of supervised release. *Id.* at 28. In reaching its decision, the Court noted the offense was "very serious" and that the defendants defrauded the victims "at a time when they were most vulnerable." *Id.* at 30. The Court also noted that "the defendants, as is clear, also, have never accepted responsibility for what they did." *Id.* During sentencing, the Court also imposed restitution and forfeiture, each in the amount of $24,639.47. *Id.* at 34. After sentencing, the defendants began their three-year term of supervised release, which is scheduled to end on January 19, 202. Doc. 595.

On March 29, 2023, the defendants filed a joint *pro se* motion for early termination of their term of supervised release, primarily because of poor conditions at the shelter at which they were living, Almaleh's health issues, and the defendants' desire to relocate out of the country and visit their children. Doc. 559. On April 26, 2023, the Court denied their motion because the defendants: (1) had not yet served the required one year of supervised release, (2) had failed to identify any extraordinary circumstances or unforeseen consequences stemming from their supervised release that warranted early termination, and (3) failed to explain how their supervision "has resulted in the denial of housing, jobs, city services, and the ability to see their children." Doc. 562 at 3.

On February 21, 2024, after serving over a year on supervised release, the defendants submitted a second *pro se* motion for early termination. In their motion, defendants argue that early termination is warranted because: (1) they have been complying with their terms of supervision, (2) they are "in older age and poor health," (3) they would like to visit their older relatives who live abroad, (4) and it would be better for them for their health and financially if they did not live in New York City. Doc. 593 at 1–2. The government submitted its opposition to the motion on March 1, 2024. Doc. 595. For the following reasons, the motion is DENIED.

Title 18 of the United States Code, § 3583(e)(1) authorizes the Court to "terminate a term of supervised release . . . at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." In addition to consideration of the 18 U.S.C. § 3553(a) factors, which speak to "deterrence, public safety, rehabilitation, proportionality, and consistency," early termination is warranted where "new or unforeseen circumstances" arise that "render a previously imposed term either too harsh or inappropriately tailored to serve" general punishment goals. *United States v. Lussier*, 104 F.3d 32, 35–36 (2d Cir. 1997).

"Occasionally, changed circumstances—for instance, exceptionally good behavior by the defendant or a downward turn in the defendant's ability to pay a fine or restitution imposed as conditions of release—will render a previously imposed term or condition of release either too harsh or inappropriately tailored to serve the general punishment goals of section 3553(a)." *Id.* at 36. However, "[a] defendant's faithful compliance with the terms of his supervision does not, by itself, entitle him to modification or termination of his term of supervised release." *United States v. Bouchareb*, 76 F. Supp. 3d 478, 479 (S.D.N.Y. 2014). That is because "full compliance with the terms of supervised release is what is expected . . . and does not warrant early termination." *Id.*

Here, defendants have failed to identify any extraordinary circumstances or unforeseen consequences stemming from their supervised release that warrants its early termination. First, the defendants' mere compliance with their terms of supervision is not a basis for the early termination of supervised release. *Bouchareb*, 76 F. Supp. 3d at 479. Second, the fact that the defendants are "in older age and poor health" or that they have older relatives who live abroad are not unforeseen circumstances that warrant early release. The Court was aware of the defendants' age

3

and their overseas relatives at the time of sentencing.  Sentencing Transcript, Doc. 557 at 24–26.  Third, in regard to the defendants' complaints about living in New York City, the defendants could speak to Probation if they wish to move so that Probation could determine whether another district would accept their supervision.  The Government represents that the defendants have been informed of this option, but have so far declined to pursue it.  Doc. 595 at 5.

Accordingly, because the defendants have not identified any extraordinary circumstance or unforeseen consequence stemming from their supervised release that warrants its early termination, the motion is DENIED.  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 593.

It is SO ORDERED.

Dated:   March 5, 2024
         New York, New York

_____
EDGARDO RAMOS, U.S.D.J.